IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Civil Action No. 0:24-cv-60305-AHS

| | |
|---|---|
| LITIGATION LAWYERS, PROFESSIONAL ASSOCIATION, a Florida professional corporation, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| CHRISTOPHER HARBISON, individually, And REGINA HARBISON, individually, | ) ) ) |
| Defendants. | ) ) |

**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR IN THE ALTERNATIVE, TO TRANSFER AND MEMORANDUM OF LAW IN SUPPORT**

On March 17, 2016, the Florida Supreme Court concluded, Attorney Rakusin "has a history of illegal and improper fee arrangements" and suspended him from the practice of law. *See The Fla. Bar v. Rakusin*, No. SC15-390, 2016 WL 1065880, at *1 (Fla. Mar. 17, 2016); *see* **Exhibit 1**, Referee's Report in Florida Supreme Court Case No. SC21-1182, p. 5. Despite the Supreme Court's warning, Attorney Rakusin continued to "put his own personal interests ahead of his clients." Referee's Report p. 4. Ultimately, the Florida Supreme Court disbarred Mr. Rakusin on May 8, 2023. *Fla. Bar v. Rakusin*, No. SC2021-1182, 2023 WL 3300043, at *1 (Fla. May 8, 2023).

Even after being disbarred, however, Mr. Rakusin persists in the conduct that caused his involuntary exit from the legal profession. Through the guise of his firm, Plaintiff Litigation Lawyers, Professional Association ("Plaintiff"), he brings suit for breach of contract and related claims against his former clients not in Missouri, where they reside, where his underlying representation took place, where the witnesses and documentary evidence in the underlying

135292825.1

litigation are located, where it is most convenient for his former clients and witnesses, and where his former clients signed the engagement agreement. Instead, he has filed the claim in Florida – where it suits him best. The matter should be dismissed or transferred. This Court may not exercise personal jurisdiction over Mr. Rakusin's former clients, the Harbisons, and even if jurisdiction were appropriate, the matter should be transferred to the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 1404(a) – where the underlying representation was centered.

## BACKGROUND

In two Missouri lawsuits, one filed in Missouri state court and the other filed in the United States District Court for the Eastern District of Missouri, Patriots Bank brought suit against husband-and-wife, Regina and Chris Harbison (the "Harbisons"), and several business entities associated with the Harbisons, for damages and for the appointment of a receiver. *See Patriots Bank v. Black River Motel, LLC et al.*, Case No: 21WA-CC00250 and *Patriots Bank v. Harbison et. al*. Case No. 4:21CV991 HEA (the "Underlying Litigation"). The Underlying Litigation involved security interests on Missouri businesses and real estate. S*ee* **Exhibit 2**, Decl. of. Schwartz. At the recommendation of a family member, the Harbisons retained Mr. Rakusin. *See* **Exhibit 3**, Decl. of Regina Harbison. Attorney Rakusin was the president and co-owner of Plaintiff. *See* Report of Referee p. 8 ("respondent [Rakusin] failed to disclose he was actually the president and co-owner of the Litigation Lawyers, Professional Association."). As recently as February 29, 2024, Mr. Rakusin purports to remain associated with the Plaintiff as a "Law Clerk." *see* Decl. of Schwartz.

Mr. Rakusin began charging the Harbisons for legal services as of August 17, 2021. Compl. Ex. B, p. 2. His records indicate he participated in a 105-minute conference with the Harbisons on

or about August 24, 2021. *Id*. Ms. Harbison recalled that during this call, the Harbisons were physically in Missouri and Mr. Rakusin represented he was not in Florida. *See* Decl. of Regina Harbison. The Employment and Retainer Agreement ("Engagement Agreement") was dated three days later, August 27, 2021. Compl. ¶ 4. When the Harbisons signed the agreement, they were physically present in Missouri. Decl. of Regina Harbison.

The Engagement Agreement reflected the fact that Mr. Rakusin was not licensed to practice law in Missouri. Compl. Ex. A, p. 3. The agreement states in part, "Rakusin [] is not licensed to practice law in the State of Missouri or in the Federal District Court for the Eastern District of Missouri. In order to appear in [the Underlying Litigation], the Courts will have to accept counsel's pro hac vice applications and authorize him to appear and argue as a visiting attorney." *Id*. Attached to the contract was a copy of Missouri Supreme Court Rule 9.03, which states in part "[t]he visiting attorney by his or her appearance agrees to comply with the rules of Professional Conduct as set forth in Rule 4 [regarding the regulation of attorney] and become subject to discipline by the court of [Missouri]." Compl. Ex. A, pp. 8-9. In fact, Attorney Rakusin did file motions to practice pro hac vice with respect to the Underlying Litigation. Decl. of Schwartz.

At no time did Mr. Rakusin, or anyone acting on his behalf, explain to the Harbisons that they might potentially be subjecting themselves to personal jurisdiction in Florida by retaining Attorney Rakusin. Decl. of Regina Harbison. At no point did Mr. Rakusin indicate that if there was a fee dispute, a lawsuit could be brought in Florida. *Id*. At no time prior to or during the representation did Attorney Rakusin suggest or recommend that the Harbisons seek independent counsel to review his Engagement Agreement, or negotiate it on their behalf. *Id*.

The invoicing records which Plaintiff attached to the Complaint reflect eleven instances where Mr. Rakusin traveled to Missouri to perform legal services pursuant to the Engagement

3

Agreement. These occurred on the following dates: September 17, 2021, October 14, 2021 to October 27, 2021, November 4, 2021 to November 13, 2021, December 4, 2021 to December 7, 2021, December 28, 2021 to December 31, 2021, January 3, 2022 to January 7, 2022, March 28, 2022 to March 29, 2022, August 22, 2022 to August 23, 2022, September 19, 2022 to September 20, 2022, November 6, 2022 to November 7, 2022, December 8, 2022 to December 10, 2022. Compl. Ex. B, pp. 10, 15, 21, 27, 37-38, 43, 47, 69, 100-01, 107, 116, 122. These records show that on dates in which Mr. Rakusin was either working in Missouri or was traveling to or from Missouri, he invoiced 620.73 hours at a contract rate of $480.00 per hour. At that contract rate, this amounted to $297,950.40.

Mr. Rakusin advised the Harbisons that the address on his invoices was not an office where he typically worked. *see* Decl. of Regina Harbison. The office identified (2881 E Oakland Park Blvd #434) is a virtual office operated by a company called "The Crexent" which provides conference rooms, temporary office space, mail forwarding services, and other associated office services. Decl. of Schwartz, ¶ 3. The Crexent advertises its services as follows:

> ***Our virtual office services are ideal for businesses that require a prestigious business address and services but don't require permanent office space***.

*Id*. The Harbisons never met Mr. Rakusin at 2881 East Oakland Park Blvd., or his home, where he said he worked from time to time. Decl. of Regina Harbison. From the Harbisons' perspective, it was immaterial where Mr. Rakusin did his work, except for where work required him to make personal appearances in Missouri. *Id*.

Plaintiff pleads, "[c]ommencing in August of 2021, Defendants made payments to the Law Firm in Broward County, Florida." Compl. ¶ 6. This allegation is false. In August 2021, the Harbisons caused two payments to be made to Mr. Rakusin and his firm totaling $75,000.00. Decl. of Regina Harbison. Neither payment was made to Broward County, Florida. Instead, both

payments were wired to Plaintiff's bank account at a bank headquartered in Arkansas. Decl. of Regina Harbison; Decl. of Schwartz, ¶ 3. The next payment made to Mr. Rakusin's firm occurred on or about September 30, 2021. Decl. of Regina Harbison. This payment was also made by wire to the same bank headquartered in Conway, Arkansas. *Id*. The next payments made were made in part by wire to the same bank and in part by personally delivering a paper check to Mr. Rakusin when he was in Missouri. *Id*. The Harbisons did not agree that payments to Mr. Rakusin's law firm were to be made at his virtual office. *Id*. Further, Mr. Rakusin did not insist on payments being made in Florida. *Id*. Instead, payments were often made personally in Missouri or by wire transfer to a bank headquartered in Arkansas. *Id*.

Both of the Harbisons reside in Missouri, not Florida. Compl. ¶¶ 2-3. Neither of the Harbisons have ever resided in Florida. *Id*. Neither owned property in Florida during the applicable period or at all during the underlying litigation. *Id*. The Harbisons have not engaged in business activities in the state of Florida related to the underlying litigation.

I. ANALYIS

A. The Court Lacks Personal Jurisdiction over the Defendants.

Respectfully, this Court lacks personal jurisdiction over the Harbisons. The fact is, the Harbisons have no meaningful contacts with this forum, and certainly no contacts sufficient to enable a Florida Court to exercise personal jurisdiction over them. The matter should be dismissed under Rule 12(b)(2).

A court engages in a two-step process to determine whether personal jurisdiction exists over a nonresident defendant: "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)

135292825.1

(footnote omitted) (citing *Horizon Aggressive Growth, L.P. v. Rothstein–Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005)). The Plaintiff's burden is to plead sufficient material facts to establish the basis for exercising personal jurisdiction. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (citing *Prentice v. Prentice Colour, Inc.*, 779 F.Supp. 578, 583 (M.D. Fla. 1991)). The burden then shifts to the defendant, and if the defendant meets this burden, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by declarations or other competent proof, and not merely reiterate the factual allegations in the complaint. *Id.*

Here, there is no personal jurisdiction because (1) the Florida long-arm statute is not satisfied as the Harbisons did not breach a contract that ***required*** performance in Florida, (2) the Harbisons have no "minimum contacts" in Florida as they neither reside in Florida nor did they avail themselves of the privilege of conducting business activities in Florida, and (3) the traditional notions of fair play and substantial justice would be offended if a disbarred Florida attorney were allowed to sue his former Missouri clients for fees arising from Missouri litigation in Florida.

**1.) Florida's long-arm statute is not satisfied. The Harbisons did not breach a contract requiring performance in Florida.**

Plaintiff's Complaint does not identify which section of the long-arm statute it claims is applicable. Compl. ¶ 5. Presumably, Plaintiff proceeds under Fla. Stat. § 48.193(1)(a)(7), which states a person subjects himself or herself to jurisdiction in Florida by, "[b]reaching a contract in this state by failing to perform acts ***required by the contract*** to be performed in this state." (emphasis added). There are no other provisions of Florida's long-arm statute that might reasonably be the basis for a finding of personal jurisdiction. *See generally* Fla. Stat. § 48.193.

Plaintiff has neither pled facts, nor established with evidence, that the Harbisons failed to perform any act ***required*** by the Engagement Agreement to be performed in Florida. Federal courts

6

135292825.1

must construe the Florida long-arm statute as would the Florida Supreme Court. *Horizon Aggressive Growth, L.P.*, 421 F.3d at 1166-67 (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)). Florida courts construe the state's long-arm statute strictly. *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996); *see also Labbee v. Harrington*, 913 So. 2d 679, 682-83 (Fla. Dist. Ct. App. 2005) ("We recognize that long-arm statutes are strictly construed and require the plaintiffs to clearly bring themselves within the ambit of the statutes."). The Harbisons did not agree that all payments under the Engagement Agreement would be made in Florida, Plaintiff did not insist that such payments be made in Florida, and, in fact, payments were not made in Florida. Therefore, the Engagement Agreement did not *require* performance in Florida.

That the Harbisons contracted with Plaintiff, a Florida business entity, is insufficient. *See, e.g.*, *Ware v. Citrix Sys., Inc.*, 258 So. 3d 478, 485 (Fla. Dist. Ct. App. 2018) (holding that § 48.193(1)(a)(7) did not provide a basis for jurisdiction where Florida-based employer sued out-of-state former employees for breach of their employment contracts by accessing employer's confidential information and sharing it with their new employer); *SANDP Sols., Inc. v. Silver Logic, LLC*, No. 21-80949-CIV, 2022 WL 7049243, at *7 (S.D. Fla. Jan. 14, 2022) (finding § 48.193(1)(a)(7) not satisfied). This is because the Engagement Agreement did not *require* that either the actual legal work be performed in Florida or that legal fees be paid in Florida. *See Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1218 (11th Cir. 1999) ("This provision [under former subsection 7] means that there must exist a duty to perform an act *in Florida*; a contractual duty to tender performance to a Florida resident is not in itself sufficient to satisfy the statute.") (citations omitted)). "[E]ven assuming that defendants had a contractual duty to tender performance to a Florida resident, that is not in and of itself sufficient to satisfy the statute." *Pennisi v. Reed*, No.

7

135292825.1

218CV239FTM99MRM, 2018 WL 3707835, at *5 (M.D. Fla. Aug. 3, 2018). Plaintiff's residence in Florida is insufficient to satisfy the long-arm statute.

Although in the absence of a contractual provision specifying a place of payment it may be presumed that payment is due at the creditor's place of business, that presumption may be rebutted. *Pennisi*, 2018 WL 3707835, at *5. Here, the presumption is rebutted. *See RG Golf Warehouse, Inc. v. Golf Warehouse, Inc.*, 362 F. Supp. 3d 1226, 1238 (M.D. Fla. 2019) (presumption rebutted where payments were wired to banks in other states). Because the Engagement Agreement itself does not require performance in Florida, payments were routinely made outside of Florida, often in Missouri, and Mr. Rakusin had no permanent physical office where he conducted business with respect to the Harbisons, the long-arm statute is not satisfied.

> **2.) There is no Personal Jurisdiction in Florida: The Harbisons did not have "minimum contacts" in Florida and, therefore, Due Process is not Satisfied.**

Even placing aside the special fiduciary obligations Attorney Rakusin owed to his clients, which are discussed in greater detail in the following section, the Harbisons did not conduct business in Florida and therefore jurisdiction in Florida would violate the Due Process rights of the Harbisons. To establish minimum contacts, courts will consider three criteria: (1) the contacts must be related to the plaintiff's cause of action or have given rise to it; (2) the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws; and (3) the defendant's contacts within the forum state must be such that he could reasonably anticipate being hauled into court there. *Sculptchair*, 94 F.3d at 631 (citing *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 627 (11th Cir. 1994)). None of these criteria are met. Here, the Harbisons only connection with Florida was arguably that Plaintiff may have worked from time to time from his home in Florida – an entirely fortuitous contact not material to the reality of what Mr. Rakusin was engaged to do.

8

135292825.1

Refusing to make payments to a person or company in Florida per the terms of the contract does not provide the requisite minimum contacts to satisfy the constitutional due process aspects of personal jurisdiction. *See Nat'l Air Cargo Grp., Inc. v. UPS Worldwide Forwarding, Inc.*, No. 22-23429-CIV, 2023 WL 3778243, at *6 (S.D. Fla. Mar. 2, 2023) (mere contractual relationship with a Florida business is not enough to subject foreign defendant to personal jurisdiction in Florida and "due process requirement of minimum contacts is not satisfied by a showing that a party has entered into a contract with a non-resident, or a showing that payment must be made in Florida.").

In *Kupperman v. Shragen*, the plaintiff was a Florida resident and sued the defendant, a resident of New Jersey, for various loans that had been extended. No. 815CV02019T30JSS, 2015 WL 6956555, at *1 (M.D. Fla. Nov. 10, 2015). The defendant claimed these loans were gifts. *Id*. The money was loaned or gifted after the defendant solicited the loan from the plaintiff and after the parties exchanged about 35 emails with each other about the transaction. *Id*. The money was loaned from Florida and had to be repaid in Florida. *Id*. The district court found that these facts did not amount to sufficient minimum contacts because the defendant never physically entered Florida to solicit the loan or gift and the negotiations took place not in Florida, but via email. *Id.*, at *5; *Christus St. Joseph's Health Sys. v. Witt Biomedical Corp*, 805 So.2d 1050, 1053 (Fla. 5th DCA 2002) (holding that contract in which the defendant hospital purchased two machines in Florida, owed payment in Florida, and required plaintiff to service the machines in Florida, did not establish sufficient minimum contacts).

Similarly, in the present case there was no conduct on the part of the Harbisons which would constitute a purposeful availment in Florida. The Engagement Agreement was executed by the Harbisons outside of Florida. Neither the Harbisons nor Mr. Rakusin were even in Florida

9

135292825.1

during the initial telephone conversation. The Engagement Agreement did not require explicitly or implicitly that Mr. Rakusin conduct any work in Florida and, in fact, he did not typically (if ever) use an established law office in Florida to do the work in question.

The services performed by Mr. Rakusin were not specific to Florida and could have been performed anywhere through the use of phone, email, virtual office, and fax communications. "The contacts with the forum state must not be merely "fortuitous" or "random." *Grillo's Pickles, Inc. v. Patriot Pickle, Inc.*, No. 1:23-CV-22387, 2023 WL 9094237, at *3 (S.D. Fla. Nov. 9, 2023), report and recommendation adopted, No. 23-CV-22387, 2023 WL 8467269 (S.D. Fla. Dec. 7, 2023). The only substantial connection between this lawsuit and Florida is that Mr. Rakusin, before being disbarred, did legal work out of his home in Florida. However, the United States Supreme Court has squarely held, "***the plaintiff cannot be the only link between the defendant and the forum***." *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (emphasis added) ("however significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'") (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)). "Merely alleging that the effects of the defendants' conduct were felt in Florida is not enough." *ECB USA, Inc. v. Savencia Cheese USA, LLC*, No. 20-21681-CIV, 2023 WL 5195482, at *4 (S.D. Fla. Apr. 12, 2023). Therefore, there is no minimum contact sufficient to sustain this action in Florida. Here, what few contacts with Florida are vaguely pled, are fortuitous and therefore, insufficient.

### 3.) The Harbisons had no fair warning that they might be subjected to Florida jurisdiction; Florida jurisdiction would offend traditional notions of fair play and substantial justice.

Even if this litigation involved garden-variety bookkeeping services provided by a Florida-based plaintiff to his former Missouri-based clients, there still would be no personal jurisdiction

135292825.1

for the reasons discussed above. However, disbarred-attorney Rakusin did not provide garden-variety bookkeeping services. Instead, he was an attorney who provided legal counsel and owed his clients fiduciary obligations. The Due Process analysis must be viewed through this fiduciary relationship and Mr. Rakusin's obligation to place his client's interests above his own.

Even if the court has found that the defendant purposefully established the requisite minimum contacts with the forum state, the court still must determine whether the assertion of jurisdiction comports with "fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980). This inquiry involves among other factors, promoting the "shared interest of the several States in furthering fundamental substantive social policies." *Id*. Missouri has a compelling interest in protecting its citizens from unscrupulous lawyers. *In re Littleton*, 719 S.W.2d 772, 777 (Mo. banc 1986) ("The purpose of discipline is not to punish the attorney, but to protect the public and maintain the integrity of the legal profession."). This state interest in protecting the public from an attorney that fails in his fiduciary obligations is paramount in this "fair play" inquiry under the facts of the current case.[1]

Of course, lawyers owe unique fiduciary duties to their clients. *See Corrigan v. Armstrong, Teasdale, Schlafly, Davis & Dicus*, 824 S.W.2d 92, 96 (Mo. App. E.D. 1992) ("nor can they sensibly dispute that Armstrong, as Mr. Corrigan's attorney, owed Mr. Corrigan the duties of an agent and of a fiduciary.")  Here, those fiduciary duties were breached when Mr. Rakusin, (1) failed to advise his clients about the potential consequences of retaining a Florida lawyer, and (2) failed to include a Missouri forum selection clause in the agreement. In the analogous situation where an attorney attempts to use a forum selection clause favoring his home forum over his

---

[1] Other factors such as the interstate judicial system's interest in obtaining the most efficient resolution of controversies (in Missouri, where the evidence and defendants are located) are discussed elsewhere in this motion and are incorporated by reference.

client's home forum or forum where the underlying litigation takes place, courts have found those provisions to be unenforceable and violate "the strong public policy of the" state where the client and representation was located. *See generally Brown v. Partipilo*, No. CIV.A. 1:10CV110, 2010 WL 3979802, at *5 (N.D.W. Va. Oct. 8, 2010); *see also* Restatement (Third) of the Law Governing Lawyers § 18 cmt. c (AM. L. INST. 2000) ("[C]lient-lawyer fee contracts entered into after the matter in question is underway are subject to special scrutiny.").

*Falk & Fish, L.L.P. v. Pinkston's Lawnmower & Equip., Inc.*, 317 S.W.3d 523 (Tex. App. 2010) is instructive. In that attorney fee dispute litigation, the underlying litigation and client were located in North Carolina. *Id*. at 525. When a fee dispute occurred, the Texas trial court dismissed the collection lawsuit and the law firm appealed. *Id*. at 526. Like the instant case, the client, the underlying litigation, and the evidence pertinent all were all located outside the forum state. *See id*. at 525-26. After reiterating that courts must, "be mindful of the ethical considerations overlaying the contractual relationship between an attorney and client," the court affirmed the dismissal for lack of personal jurisdiction. *Id*. at 528; *see also Metnick & Levy, P.A. v. Seuling*, 123 So. 3d 639, 646 (Fla. Dist. Ct. App. 2013) (J. Gross, dissenting)[2] (arguing client "should not reasonably have anticipated being hauled into a Florida court to resolve a dispute with the law firm over its engagement; for her, Florida was a distant, difficult forum, advantageous only to the law firm, with no connection to the underlying facts of the case.").

---

[2] Defendants acknowledge the Florida District Court of Appeals, in a split decision, held that due process was satisfied in another lawsuit involving a Florida lawyer representing a client with respect to legal matters out of state. *See Metnick & Levy,* 123 So. 3d at 646. While that opinion is factually distinguishable in several key respects, this opinion, of course, does not bind the United States District Courts with respect to its Due Process analysis. A federal court is "not bound by a state court's interpretation of federal law." *Gallardo by & through Vassallo v. Dudek*, 977 F.3d 1366, 1367 (11th Cir. 2020); *see Venn v. St. Paul Fire & Marine Ins. Co.*, 99 F.3d 1058, 1064 (11th Cir. 1996).

135292825.1

Attorney Rakusin, whose job it was to protect the interest of his clients, never advised his clients that by retaining him he may be able to compel them to litigate any potential fee dispute in a foreign court. Attorney Rakusin chose not to add a Missouri forum selection clause into the Engagement Agreement. The Harbisons had no fair warning that they may be subjected to jurisdiction in Florida because their lawyer chose not to give them the warning. Their lawyer, who unbeknownst to them had a "history of illegal and improper fee arrangements," chose not to consider his clients' best interest when forming the contract. Fair play and substantial justice requires that the Harbisons not be penalized for their own lawyer's breach of fiduciary duty. Under these circumstances, the exercise of Florida jurisdiction over the Harbisons would not comport with "traditional notions of fair play and substantial justice." *ECB USA,* 2023 WL 5195482, at *2 (no jurisdiction for defendants who "never lived, conducted business, registered to do business, or owned or leased property in Florida" and whose only contact was that stock purchase agreement stated it was to close in Florida). For the Harbisons, Florida is a distant, difficult forum, advantageous only to the law firm, with no connection to the underlying facts of the case. Under these circumstances, the Harbisons expectation that any dispute would be litigated in the state of their residence or in the forum where the underlying litigation proceeded was reasonable.

**B. Alternatively, this case should be transferred under 28 U.S.C. § 1404(a).**

Alternatively, the Court should transfer this case to the Eastern District of Missouri. 28 U.S.C. § 1404(a) permits a district court, "[f]or the convenience of the parties and witnesses, in the interest of justice," to "transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Although the plaintiff's choice of forum is ordinarily given consideration, *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955), "where the operative facts underlying the cause of action did not occur within the

forum chosen by Plaintiff, the choice of forum is entitled to less consideration." *Williams v. King,* No. 21-CV-22579, 2021 WL 3079873, at *1 (S.D. Fla. July 21, 2021) (certain internal citation omitted). "Congress' intent in passing 28 U.S.C. § 1404(a) was to permit courts to transfer cases upon a lesser showing of inconvenience than that required by the doctrine of forum non conveniens." *J.I. Kislak Mortg. Corp. v. Conn. Bank & Tr. Co.*, 604 F. Supp. 346, 347 (S.D. Fla. 1985).

A party moving for transfer under § 1404(a) must demonstrate, (1) that an adequate alternative forum is available, and (2) that the private and public interest factors weigh in favor of dismissal or transfer. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 951 (11th Cir. 1997) (citing *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1429 (11th Cir. 1996)). Transfer or dismissal for forum non conveniens, which is a more rigorous standard, is granted in attorney fee dispute litigation in favor of the jurisdiction where the subject matter of the representation occurred. *Leetsch v. Freedman*, 260 F.3d 1100, 1105 (9th Cir. 2001) (lawsuit by German lawyer against his clients involving real property in Germany was dismissed in favor of German Courts); *Levin, Fishbein, Sedran & Berman v. Jameson*, No. 09-3936, 2009 WL 4857434, at *6 (E.D. Pa. Dec. 14, 2009) (fee dispute involving Exxon Valdez oil spill litigation transferred to Alaska).

In *Baker, Donelson, Bearman, Caldwell & Berkwitz, P.C. v. Platinum Transp. Ins. Risk Retention Grp., Inc.,* a district court held that there was a public interest in retaining a fee dispute case in Tennessee, where underlying litigation involved Tennessee legal representation. No. 2:20-CV-48, 2020 WL 13888134, at *4-5 (E.D. Tenn. Nov. 19, 2020). That court explained:

> The present action involves a dispute over the value of legal services rendered in the State of Tennessee. Tennessee courts will be more familiar with the rules governing the legal billing practices of Tennessee attorneys. Additionally, a

Tennessee court, with its experience applying the laws of Tennessee, would be best suited to resolve these claims which are sound in Tennessee law.

*Id.*, at *5.

**1.) There is an available alternate forum: the United States District Court for the Eastern District of Missouri.**

An alternative forum is available "when the foreign court can assert jurisdiction over the litigation sought to be transferred." *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001); *see also Panama*, 119 F.3d at 951 ("Generally, a defendant satisfies the first prong of the analysis by showing that it is amendable to process in the other jurisdiction") (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981) (internal quotation marks omitted)). Here, each Defendant would be subject to jurisdiction in the Federal District Court for the Eastern District of Missouri. The Harbisons reside in Missouri and consent to venue in the Eastern District of Missouri. Thus, the first prong is satisfied.

**2.) The private interest factors favor transfer.**

Regarding the private interest prong of the Section1404(a) analysis, relevant private factors include the relative ease of access to sources of proof, the ability to obtain witnesses, and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Panama*, 119 F.3d at 952; *Kurdas v. Mendez*, No. 8:16-CV-194-T-24-JSS, 2016 WL 3459485, at *2 (M.D. Fla. June 24, 2016). These interests weigh strongly in favor of transferring the case to Missouri. Because all of the critical facts took place in Missouri, there is no indication any witness, aside from Plaintiff, is located in Florida.

One central issue in this litigation is the reasonable value of the fees charged. The key witnesses relating to the Underlying Litigation, the tactics engaged in by Mr. Rakusin, and the evidence of their value, if any, to his clients, will be located in Missouri. *See Leetsch*, 260 F.3d at

15

1104-05 ("Because all the representation that underlies the legal services fee and cost claims occurred in [the foreign jurisdiction], with only the exception of correspondence between the parties, most sources of evidence on the issues will likely be located in [that foreign jurisdiction]."). Further, neither party would be able to compel key witnesses to testify live at trial in Florida because this Court has no authority to compel a witness from Missouri to appear in court in Florida. FED. R. CIV. P. 45(c) (limiting attendance of a witness to testify to 100 miles). Experts will surely be retained to opine that Mr. Rakusin's claimed fees are excessive and otherwise unlawful under Missouri law. These experts will invariably be based in Missouri. There is no indication Plaintiff will suffer the same prejudice if the case were pending in Missouri, because there is no indication any key witness, aside from Plaintiff, reside in Florida.

**3.) The public-interest factors favor transfer.**

"Public-interest factors include the sovereign's interests in deciding the dispute, the administrative burdens posed by trial, and the need to apply foreign law." *Kurdas*, 2016 WL 3459485, at *2. The public-interest factors weigh heavily in favor of Missouri since there is no connection between this controversy and Florida. This is not a "localized controversy" as there is no connection between this lawsuit and Florida, aside from Plaintiff's residency.

Most important is Missouri's critical interest in protecting its citizens from unscrupulous lawyers. *See* Website of the Office of Chief Disciplinary Counsel of the Missouri Supreme Court ("The purpose of attorney discipline is to protect the public and the administration of justice from attorneys who have not discharged their professional duties to clients, the public, the legal system, and the legal profession."). Pursuant to the Engagement Agreement, Mr. Rakusin agreed to file motions to pro hac vice and subject himself to the Missouri Rules of Professional Conduct. *See also Higgins v. W. Bend Mut. Ins. Co.*, 85 So. 3d 1156, 1158 (Fla. Dist. Ct. App. 2012).

16

135292825.1

"[Q]uestions related to the manner or method of performance under a contract are determined by the law of the place of performance." *Id.* The Missouri Rules of Professional Conduct prohibit attorneys from charging unreasonable fees. *See* Missouri Supreme Court Rule 4-1.5. Missouri law will apply to the core questions: whether Attorney Rakusin charged an excessive fee, whether he comported himself in line with the Missouri Rules of Professional Conduct, and whether he breached his fiduciary duties to his client. Therefore, one of the central disputes in this litigation will be determined under Missouri law and is of critical importance to the sovereign interests of Missouri.

Although admittedly not a dispositive factor, many federal courts have congested dockets and reducing court congestion on a forum with minimal relation to the controversy also favors transfer. It is undersigned counsel's understanding that there has been a recent increase in civil litigation as a result of legislative changes in the state of Florida.[3] This lawsuit should be transferred to reduce the temporary strain on this Court and jury pool in Florida.

## **CONCLUSION**

For the above-stated reasons, the Harbisons respectfully request this Honorable Court dismiss this matter or transfer it to the United States District Court for the Eastern District of Missouri and for such other and further relief as the Court deems just and proper.[4] Missouri is, by far, the most convenient and sensible forum.

---

[3] *See* FLORIDA BAR NEWS, https://www.floridabar.org/the-florida-bar-news/comprehensive-tort-reform-spurs-record-filings (last visited Mar. 1, 2024); INSURANCE JOURNAL, *As Lawyers Warned, Florida Courts Flooded with Suits Before Tort-Reform Bill Signed*, https://www.insurancejournal.com/news/southeast/2023/05/22/721589.htm (last visited Mar. 1, 2024).

[4] Even if the Court finds there is no personal jurisdiction, a District Court may transfer to another District Court even when it does not have jurisdiction. *See Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 992 n.16 (11th Cir. 1982) ("In this Circuit, a court

135292825.1

Respectfully submitted,

**CARLTON FIELDS**

By: /s/ Kevin P. McCoy
    Kevin P. McCoy, FL Bar No.
    4221 W. Boy Scout Blvd., Ste. 1000
    Tampa, Florida 33607
    Telephone: 813-229-4272
    Facsimile: 813-229-4133
    kmccoy@carltonfields.com

and

**CAPES, SOKOL, GOODMAN & SARACHAN, P.C.**

By:  /s/  Aaron E. Schwartz
    R. Thomas Avery, #MO45340
    (pro hac motion to be filed)
    Aaron E. Schwartz, #MO58745
    (pro hac vice motion pending)
    8182 Maryland Avenue, Fifteenth Floor
    St. Louis, Missouri 63105
    Telephone: (314) 721-7701
    Facsimile: (314) 721-0554
    avery@capessokol.com
    schwartz@capessokol.com

*Attorneys for Defendants Christerphor Harbison and Regina Harbison*

---

lacking personal jurisdiction of the defendant may transfer the case under either § 1404(a) or § 1406(a).").

135292825.1

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant conferred on February 29, 2024, with the Plaintiff in a good faith effort to resolve the issues raised in this motion but has been unable to resolve the issues. After conference the parties remained at impasse.

*/s/ Aaron E. Schwartz*
Aaron E. Schwartz

135292825.1