UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LITIGATION LAWYERS,<br>PROFESSIONAL ASSOCIATION,<br><br> Plaintiff,<br><br>v.<br><br>CHRISTOPHER HARBISON and<br>REGINA HARBISON,<br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. 4:24-cv-00793-SRC<br>)<br>)<br>)<br>)<br>)<br>) |

**<u>Memorandum and Order</u>**

The Court recently granted in part, denied in part, and held in abeyance in part Litigation Lawyers's motion to dismiss the amended counterclaims asserted by Christopher and Regina Harbison. Doc. 101 at 20 (The Court cites to page numbers as assigned by CM/ECF.). Specifically, the Court dismissed the Harbisons' legal-malpractice claim and left standing their breach-of-fiduciary-duty claim. *Id.* At the same time, the Court issued an order pursuant to Federal Rule of Civil Procedure 56(f), requiring the parties to provide information regarding the execution of the parties' retainer agreement so that the Court could address the Harbisons' claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment. Doc. 103 at 2–3. With information in hand, the Court now enters summary judgment on the choice-of-law issue and addresses the held-in-abeyance portions of the motion to dismiss.

**I. Background**

For brevity's sake, the Court incorporates by reference its previous memorandum and order, doc. 101, and thus adopts the factual background outlined in that order, *id.* at 1–3. That order left open the issue of "where the [parties' retainer agreement] was executed" so that the

Court could determine which state's substantive law applies to the Harbisons' good-faith-and-fair-dealing and unjust-enrichment claims. *Id.* at 11 (quoting *Paquin v. Campbell*, 378 So. 3d 686, 690 (Fla. Dist. Ct. App. 2024)); *see* doc. 103 at 1–2. In their supplemental briefing, the parties agreed that they formed the retainer agreement in Florida. Doc. 104 at 3; doc. 105 at 1.

Having given the parties "notice and a reasonable time to respond," the Court now "consider[s] summary judgment on its own" as to the governing law on those claims and holds that the parties entered into the retainer agreement in Florida, and that Florida substantive law applies to the remaining good-faith-and-fair-dealing and unjust-enrichment claims. Fed. R. Civ. P. 56(f). Having held Litigation Lawyers's motion to dismiss in abeyance as to those claims, the Court now turns back to that motion and addresses whether the Harbisons have stated claims upon which relief can be granted.

## II.   Standard

The Court applies the same motion-to-dismiss standard that it applied in its previous order. Doc. 101 at 4–5.

## III.   Discussion

### A.   Breach-of-the-implied-covenant-of-good-faith-and-fair-dealing claim

In their amended counterclaims, the Harbisons argued that, "[p]ursuant to the express terms of the [retainer a]greement," Litigation Lawyers (through its attorney, Stephen Rakusin) "was obligated to perform only necessary legal services on behalf of the Harbisons, represent the[m] in a manner consistent with their goals, including cost efficiency, and adhere to legal and ethical standards, including the Missouri Rules of Professional Conduct." Doc. 85 at ¶ 49;[1] *see*

---

[1] The Court notes that the Harbisons included their amended counterclaims in the same document as their amended answer. *See* doc. 85 at 1–14 (amended answer and affirmative defenses); *id.* at 14–23 (amended counterclaims). The document includes numerous sets of consecutively numbered paragraphs utilizing the same method of identification (i.e., paragraph 1, 2, 3, etc.). As the Court did in its previous memorandum and order, doc. 101

2

*id.* at ¶¶ 10–13. But throughout Rakusin's representation of the Harbisons, they contended that Rakusin acted contrary to these express terms, *see id.* at ¶ 50, "acted in bad faith," *id.*, and "used the" retainer agreement "to evade the spirit of the transaction in order to deny the[m] their expected benefits under the [a]greement," *id.* at ¶ 51.

In its motion to dismiss, Litigation Lawyers countered, in throw-away-like fashion, that the Harbisons "d[id] not allege any facts to establish . . . proximate causation[] between" Litigation Lawyers's allegedly unsatisfactory representation and the Harbisons' "purported damages." Doc. 87 at 13 (citing doc. 85 at ¶ 51). "In fact," Litigation Lawyers argued, the Harbisons did "not allege[] damages in [support of their good-faith-and-fair-dealing claim], at all." *Id.* (citing doc. 85 at ¶¶ 45–51).

"In order to assert a claim for breach of a duty of good faith and fair dealing" under Florida law, "a plaintiff must allege that a specific contractual provision has been breached, causing it damages." *APR Energy, LLC v. Pak. Power Res., LLC*, 653 F. Supp. 2d 1227, 1235 (M.D. Fla. 2009) (quoting *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F. Supp. 2d 1350, 1359 (M.D. Fla. 2007)) (applying Florida law); *see, e.g.*, *Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 896 So. 2d 787, 792 (Fla. Dist. Ct. App. 2005) ("[T]he duty of good faith performance does not exist until a plaintiff can establish a term of the contract the other party was obligated to perform and did not."); *Nautica Int'l, Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1340 (S.D. Fla. 1998) (denying dismissal of good-faith-and-fair-dealing claim under Florida law because the plaintiff alleged "an express breach of a term of an agreement"). "Moreover, the failure to perform must not be 'by an honest mistake, bad judgment or negligence; but, rather by a conscious and deliberate act, which unfairly frustrates

---

at 1 n.1, the Court, in this order, cites only to the paragraph numbers of the Harbisons' amended counterclaims, beginning on page fourteen of that document, doc. 85 at 14–23.

3

the agreed common purpose and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.'" *APR Energy*, 653 F. Supp. 2d at 1235 (quoting *Bookworld Trade*, 532 F. Supp. 2d at 1359).

The Court finds that, at this stage, the Harbisons pleaded sufficient factual allegations to satisfy each element of their claim.  First, "[p]ursuant to the express terms of the" retainer agreement, the Harbisons alleged that Rakusin "was obligated to perform only necessary legal services on behalf of the Harbisons, represent the[m] in a manner consistent with their goals, including cost efficiency, and adhere to legal and ethical standards, including the Missouri Rules of Professional Conduct."  Doc. 85 at ¶ 49.  The Harbisons pointed to paragraphs one, five, and ten of the retainer agreement as the sources of these contractual obligations.  *Id.* at ¶¶ 15–17 (quoting doc. 85-1 at ¶¶ 1, 5, 10).

Second, the Harbisons alleged that "Rakusin engaged in self-serving conduct and ineffective legal actions, in breach of the" retainer agreement.  *Id.* at ¶ 18.  As the Harbisons contended, Rakusin violated the contractual obligations in the agreement by, among other things, "engag[ing] in ineffective motion practice, pursu[ing] legal actions contrary to established precedent, . . . prolong[ing] litigation," and failing to "resolve, or even attempt to resolve, the" underlying lawsuits against the Harbisons.  *Id.* at ¶ 19; *see also id.* at ¶¶ 18, 50.  They further alleged that Rakusin "acted in bad faith" through his representation of them.  *Id.* at ¶ 50.

And lastly, because of Rakusin's alleged breaches, Litigation Lawyers "invoiced [the Harbisons] over $1 million in legal fees," *id.* at ¶ 23, the Harbisons "were forced to retain new counsel at their own expense to remediate the damage done by Rakusin," *id.* at ¶ 26, and an opposing party in the Harbisons' underlying lawsuits "sought recovery" from them of "over $2 million in attorneys' fees," *id.* at ¶ 24.  The Court thus finds that the Harbisons have "alleged

4

that a specific contractual provision has been breached, causing [them] damages," *APR Energy*, 653 F. Supp. 2d at 1236.  Moreover, "[t]aking [the Harbisons'] allegations as true" at this stage, the Court finds that their allegations state a claim for "an express breach of a term of [the retainer] agreement." *Nautica*, 5 F. Supp. 2d at 1340.  The Court therefore denies the motion to dismiss the claim for breach of the implied duty of good faith and fair dealing.

### B.     Unjust-enrichment claim

The Harbisons also pleaded an unjust-enrichment claim.  Doc. 85 at ¶¶ 52–60.  Litigation Lawyers sought dismissal of that claim solely on the ground that the claim relied "upon the same facts as Count I for legal malpractice."  Doc. 86 at ¶ 5; *see* doc. 87 at 5, 8.  But as the Court determined in its previous order, the Harbisons failed to sufficiently plead a legal-malpractice claim.  Doc. 101 at 16.  Thus, whether the now-dismissed legal-malpractice claim subsumed the Harbisons' unjust-enrichment claim is inapposite here.  *See id.* at 16–17 (analyzing the sufficiency of the Harbisons' breach-of-fiduciary-duty claim after dismissing their claim for legal malpractice).

Interestingly, Litigation Lawyers, in its motion-to-dismiss briefing, did not request—or even mention—dismissal of the unjust-enrichment claim under the rationale that, "[u]pon a showing that an express contract exists, an unjust enrichment count will fail." *Degutis v. Fin. Freedom, LLC*, 978 F. Supp. 2d 1243, 1265 (M.D. Fla. 2013) (citing *Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. Dist. Ct. App. 1998)) (dismissing plaintiff's unjust-enrichment claim because the plaintiff "d[id] not contest that there was a valid mortgage contract between the [p]arties").

In a nutshell, Florida law provides that "[t]he existence of an express contract negates an action under an unjust enrichment theory." *Braham v. Branch Banking & Tr. Co.*, 170 So. 3d

5

844, 848 (Fla. Dist. Ct. App. 2015) (citing *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. Dist. Ct. App. 2008)) (dismissing unjust-enrichment claim because the parties had "an express contract"); *see, e.g.*, *Degutis*, 978 F. Supp. 2d at 1266 ("Plaintiff does not contest that there was a valid mortgage contract between the [p]arties.  Thus, [p]laintiff[']s claim for unjust enrichment fails."); *McIntyre v. Marriott Ownership Resorts, Inc.*, No. 13-80184-Civ., 2015 WL 162948, at *5 (S.D. Fla. Jan. 13, 2015) ("[T]he parties agree that express contracts exist between them regarding the sale of the timeshare and the title insurance. . . .  Consequently, the Court must dismiss the [plaintiffs'] unjust-enrichment claim.").

      Here, the parties agreed that an express contract exists, *see, e.g.*, docs. 104–05, and the Court has granted summary judgment that Florida law governs the contract, *see supra* pp. 1–2.  (Consequently, this is not a Rule 8(d) pleading-in-the-alternative situation.).  The amended counterclaims leave no doubt that "Rakusin represented" the Harbisons "for over one year," doc. 85 at ¶ 11, pursuant to "[t]he [retainer a]greement" that "set forth the terms and conditions of Rakusin's representation and the scope of his legal services," *id.* at ¶ 12.  The Harbisons also did not mince words in describing Rakusin's conduct related to his representation:  "Rakusin breached the [retainer a]greement." *Id.* at ¶ 35.  And as the Court has referenced, the Harbisons attached as an exhibit a copy of the agreement, *id.* at ¶ 15 (citing doc. 85-1 at ¶ 1), and referenced the agreement and the attorney-client relationship throughout their allegations of Rakusin's wrongdoing, *see, e.g.*, *id.* at ¶¶ 15–18, 21, 26–27, 30–31, 33–34, 37, 39–40, 46–49, 51, 53–54, 60.  In any event, although the Harbisons previously raised a breach-of-contract claim in their initial counterclaims, doc. 63 at 19–20, they forwent asserting an amended counterclaim for breach of the retainer agreement, *see* doc. 85.

6

And so, because the Harbisons themselves alleged "[t]he existence of an express contract" (the retainer agreement), and the Court has found on summary judgment that the contract exists, and that the contract concerns the same subject matter for which they seek to recover (Rakusin's alleged violative conduct and the attorney-client relationship stemming from the agreement), their unjust-enrichment claim must fail.  *Braham*, 170 So. 3d at 848 (citing *Diamond*, 989 So. 2d at 697); *Degutis*, 978 F. Supp. 2d at 1265–66; *McIntyre*, 2015 WL 162948, at *5.  Moreover, the Court cannot find, and the parties did not provide, any authority standing for the proposition that the limitation on unjust-enrichment claims due to the presence of an express contract need not apply simply because the Harbisons strategically chose to not raise a breach-of-contract claim in their amended counterclaims.  *Compare* doc. 63 at 19–20, *with* doc. 85.  Indeed, omitting the breach-of-contract claim did not eliminate the existence of the retainer agreement, and the good-faith-and-fair-dealing claim itself turns upon the existence of it.  *See supra* Section III.A.  The Court therefore dismisses the Harbisons' unjust-enrichment claim for failure to state a claim.

**IV.    Conclusion**

Accordingly, the Court enters summary judgment on the choice-of-law issue and grants in part and denies in part the held-in-abeyance portion of Litigation Lawyers's [86] Motion to Dismiss Amended Counterclaims.  Specifically, the Court (1) enters summary judgment that Florida law applies to the claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment, (2) denies the motion to dismiss the Harbisons' good-faith-and-fair-dealing claim, and (3) grants the motion to dismiss the Harbisons' unjust-enrichment claim.  A separate order of partial dismissal accompanies this memorandum and order.

To be clear, two of the Harbisons' amended counterclaims remain in this case: (1) breach of fiduciary duty, doc. 101 at 20; and (2) breach of the implied duty of good faith and fair dealing. Litigation Lawyers must file its answer to the remaining claims "within 14 days" of this order. Fed. R. Civ. P. 12(a)(4)(A).

So ordered this 29th day of July 2025.

SLR.CR
_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE